*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-289

APRIL TERM, 2012

| | |
|---|---|
| In re Appeal of J.P. | }　　APPEALED FROM: |
| | } |
| | }　　Human Services Board |
| | } |
| | } |
| | }　　DOCKET NO. R-10/10-492 |

In the above-entitled cause, the Clerk will enter:

Petitioner J.P. appeals the Human Services Board's decision affirming a substantiation of child sexual abuse for acts committed against minor S.M. On appeal, petitioner argues that the findings are not supported by the evidence, the hearing officer incorrectly applied the burden of proof to the evidence, and the burden of proof was erroneously shifted to petitioner. We affirm.

In May 2010, the Department for Children and Families (DCF) received a report that S.M. had reported to a therapist a sexual assault by petitioner that had occurred three years prior, when S.M. was eleven or twelve and petitioner was fifteen. Following an investigation, DCF substantiated petitioner for child sexual abuse. After DCF declined to overturn the substantiation upon review, petitioner appealed to the Human Services Board for a hearing.

At the hearing, conducted by a hearing officer on behalf of the Board, S.M. testified to the following. Petitioner lives in a nearby town, but his grandparents live next door to S.M., and S.M. thought petitioner lived there with his grandparents at the time of the incident. At the time of the hearing, S.M. was fifteen years old and petitioner was seventeen or eighteen. During the time period preceding the incident, petitioner helped his uncle maintain a cemetery located across the street from S.M.'s house; S.M. sometimes went over and helped them. On the particular day of the abuse, a couple of months before S.M's twelfth birthday, S.M. went into the cemetery and ran into petitioner, who asked whether S.M. wanted to hang out with him while he smoked a cigarette. Petitioner got into the truck that was parked near a river, and S.M. got in next to petitioner. After he finished his cigarette, petitioner tried to kiss S.M.; when S.M. resisted, petitioner restrained S.M. and forcibly put his hand down S.M.'s shorts and underwear, touching S.M.'s vagina. After a few minutes, petitioner got out of the truck. S.M. ran after him and hit petitioner. S.M. returned home and described a fight with petitioner to S.M.'s mother, but did not tell her about the sexual assault. S.M. did not report the sexual part of the assault at the time due to shame and embarrassment. Eventually, while at a hospital following an overdose, S.M. could not keep the secret any longer and reported the incident to S.M.'s mother.

A DCF social worker testified and described her investigation. She explained that she and a police officer had conducted a videotaped interview of S.M. She also spoke to S.M.'s

mother, who recalled an incident when S.M. reported having a fight with petitioner. The officer spoke with petitioner briefly, but the investigator did not.

Petitioner testified and denied the allegations. He claimed that he did not have any such encounter with S.M., and that, in fact, he had not had significant contact with S.M. since 2004—well prior to the alleged incident. Petitioner testified that he never fought with S.M., never touched S.M., and never attempted to kiss S.M. Petitioner, his mother and his uncle all testified that during the time period in question, petitioner was never in the cemetery without his uncle, did not and could not drive his uncle's truck, and did not smoke.

The hearing officer issued written proposed findings of fact. The hearing officer explained that "[b]ased on the consistency and details of S.M.'s allegations and the absolute and total denial of them by the petitioner, the case boils down to the inescapable conclusion that one of them is being completely untruthful." Based on the evidence and S.M.'s demeanor, the hearing officer found that S.M.'s version of events was credible. As to petitioner, the hearing officer explained that his account was consistent, but not persuasive. The hearing officer noted that "lacking in the petitioner's denials is any plausible explanation or reason why S.M. would completely fabricate such an event."

At oral argument before the Board after the hearing officer issued recommended findings, petitioner argued that the hearing officer's findings were not supported by the evidence and they inappropriately shifted the burden of proof onto petitioner. The Board adopted the hearing officer's recommended findings of fact and affirmed the substantiation. Petitioner then appealed to this Court.

This Court "will not set aside the Board's findings unless they are clearly erroneous." In re E.C., 2010 VT 50, ¶ 6, 188 Vt. 546 (mem.). "In reviewing the sufficiency of the Board's findings, we will construe the record in a manner most favorable to the Board's conclusions." Id. (quotation omitted).

Petitioner first argues that the Board made findings that conflict with the entirety of the evidence and are erroneous in light of the record. Specifically, petitioner claims that the hearing officer's finding that S.M.'s testimony was consistent is incorrect because S.M.'s statements during the videotaped interview conducted during the investigation differed from S.M.'s account at trial.

The factfinder, not this Court, is charged with weighing the evidence and assessing the credibility of witnesses. In re E.C., 2010 VT 50, ¶ 6. The Board's credibility determination was based on the evidence presented and the demeanor of the victim in the hearing. The Board's findings that S.M. gave consistent accounts of the assault and that any inconsistencies were "minimal and inconsequential" were supported by the record.

The alleged inconsistencies highlighted by petitioner are as follows: that S.M. inconsistently described the details of the mechanics of the assault, the location of the truck within the cemetery, the ownership of the truck (petitioner versus his uncle), and petitioner's status as a neighbor. Although petitioner points to minor differences in the way S.M. described the way petitioner held S.M.'s arms during the assault, the Board did not abuse its discretion in concluding that S.M.'s overall description of the assault in the interview and at trial remained

consistent. In addition, at the hearing S.M. clarified the prior interview statements, explaining "I was saying essentially the same thing—[petitioner] was holding both of my arms down with his arm."

Likewise, the Board could reasonably conclude that the other alleged inconsistencies were either not inconsistent or irrelevant. S.M.'s description of the perpetrator as a "neighbor" was not inconsistent; although petitioner lived in another town, petitioner often stayed next door to S.M.'s residence at his grandmother's house. Similarly, S.M.'s testimony that the truck was parked by a mound of dirt facing a stream could be viewed as consistent with the statement during the initial interview that the truck was located next to the river. Finally, S.M.'s statement that petitioner was standing next to "his" truck when in fact S.M. later identified the truck as belonging to petitioner's uncle was inconsequential in that S.M. consistently identified the same truck as the one in which the assault occurred. Therefore, S.M.'s testimony was largely consistent, and we are not persuaded that the Board erred in concluding that the minor discrepancies did not fundamentally undermine the credibility of S.M.'s testimony.

Petitioner also contends that the Board's findings are contradictory and unsupported because the Board found petitioner and his witnesses to be credible, yet dismissed their testimony without comment. We disagree. First, although the Board found petitioner testified "consistently," its findings do not indicate that it found petitioner credible. In fact, the logical inference from the Board's analysis—that either the petitioner or S.M. was being untruthful, and that S.M.'s testimony was credible—is that the Board did <u>not</u> find petitioner's testimony as credible. Second, the Board noted that the testimony of petitioner's witnesses did not "necessarily rule out the <u>possibility</u> that [petitioner] and S.M. could have been alone in the truck on the particular day in question." Finally, our job is not to reweigh the evidence, or to compare S.M.'s and petitioner's credibility. See <u>Highgate Assocs. v. Merryfield</u>, 157 Vt. 313, 315 (1991) ("A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding.").

Next, petitioner argues that the hearing officer incorrectly applied the evidence to the burden of proof. Petitioner essentially argues that DCF's evidence was not substantial enough to meet its burden as it was based solely on S.M.'s testimony, which petitioner contradicted. This argument is not about "the sufficiency of the evidence, but rather goes to the credibility of the witness and the weight of the evidence, matters which are entirely within the province of the [factfinder]." <u>State v. Hinchliffe</u>, 2009 VT 111, ¶ 22, 186 Vt. 487. As petitioner recognizes, "[t]he case for DCF essentially boils down to whether or not you believe the victim." While petitioner obviously disagrees, the Board found that S.M.'s account of the events was more credible and we will not second-guess that determination on appeal. <u>Id</u>.

Finally, petitioner argues that the Board violated petitioner's right to a fair hearing by shifting the burden of proof onto petitioner. Petitioner claims that the Board essentially burdened him with proving that S.M. was lying. In support, he points to the Board's statement that petitioner failed to present any credible evidence to demonstrate why S.M. would fabricate such a story. We conclude that the Board did not improperly shift the burden of proof. At the outset of its decision, it acknowledged that the issue was whether a preponderance of the evidence established that the incident took place. In later noting the absence of any credible evidence as to why S.M. had a motive to lie, the Board was merely responding to petitioner's

3

challenges to S.M.'s credibility; it was not suggesting that petitioner had an affirmative burden to disprove the Department's case.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

4